IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALYSSA L. BALDONADO,

    Plaintiff,

    v.                                                                 No. 14cv382 WJ/CG

JOE CHAVEZ, Warden, FNU JOJOLA,
correctional officer, RON PEREZ, Captain,
BILLY LNU, correctional officer, REBECCA
OTERO-GRANGER, JOHN DOE,
correctional officers 1-3, JOHN DOE, medical
contractor employees 1-3, VALENCIA VALLEY
HEALTH CARE, INC., VALENCIA FAMILY
MEDICINE AND EXRPESS CARE, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendant Kathy Fresquez-Chavez's Motion for Summary Judgment, filed July 2, 2015 **(Doc. 97)**. Having reviewed the parties' written pleadings and applicable law, and after considering the oral arguments of counsel at the summary judgment motion hearing, the Court finds that Ms. Fresquez-Chavez's summary judgment motion is not well-taken and, therefore, is DENIED.

**BACKGROUND**

Plaintiff brings this action for denial of medical care while incarcerated, alleging violations of her rights under the Eighth Amendment of the United States Constitution as well as for state tort claims and statutory violations. The instant motion was filed by one of the Defendants, Kathy Fresquez-Chavez, who contends that the lawsuit against her in her individual capacity is unsupported by law.

I.      **Underlying Facts as Asserted by Plaintiff**

Ms. Fresquez-Chavez is sued in her official and individual capacities, and at all relevant times was acting under the color of law and within the scope of her duties as a medical service provider for Valencia County Detention Center ("VCDC"), through the Valencia Valley Family Medicine and Express Care, Inc. ("VFM"). Sec. Am. Compl., Doc. 44, ¶ 14.  Because the facts that are pertinent to this motion concern only Ms. Fresquez-Chavez ("Defendant" hereinafter) and paint a limited picture of the issues in this case, the Court believes it will be helpful to set out the facts underlying Plaintiff's position, as asserted by Plaintiff in the Joint Status Report (Doc. 26):

On April 26, 2012, Plaintiff was arrested for a probation violation and placed in the custody of the VCDC, in Los Lunas, New Mexico, where she remained in custody from April 26 2012 through May 21, 2012. While Plaintiff was being booked into VCDC on April 26, 2012, Plaintiff informed the staff at VCDC that she had pain in both legs, and severe pain in her right leg, and requested medical treatment. She was unable to stand in the booking cell, had lost control of her bowels, and was lying on the floor. VCDC by Correctional Officer Billy Haskew observed this, but instead of giving Plaintiff physical assistance and permitting her to wash herself, he threatened to shoot a Taser at Plaintiff and told her repeatedly that she was fine. Even though she could not walk or properly tend to herself or her wounds, Plaintiff was moved to general population on April 28, 2012. After she was moved to general population, Plaintiff continued to feel extremely ill, and to experience pain in her left leg.  She repeatedly requested from John Doe Correctional Officers One through Three that they assist her in obtaining medical attention. The Correctional officers refused to attempt to obtain medical assistance for Plaintiff, and instead, berated her, and accused her of faking her injuries. While in general population,

Plaintiff lost control of her bowels on more than one occasion but was denied assistance with showering or cleaning by VCDC correctional officers.

During or after a hearing attended by Plaintiff on or about May 3, 2012 at the Thirteenth Judicial Court House in Valencia County, before State District Judge William A. Sanchez, Plaintiff was so obvious ill that Judge Sanchez ordered the Correctional Officers from VCDC present in the court to transport Plaintiff directly to a medical facility so she could be examined and treated. Doctors at the urgent care facility where Plaintiff was examined and treated suspected that she had a severe infection, and prescribed intravenous ("IV") injections of Vancomycin twice daily, twelve hours apart.  Following that visit, the urgent care facility sent a letter to Plaintiff's mother, advising that Plaintiff's medical condition was severe, and that she needed to be seen in the urgent care facility within several days of the May 3, 2012  visit. However, VCDC and VFM refused to arrange for Plaintiff to return to the urgent care facility for a follow-up on her illness.  Instead, they asserted that Plaintiff was receiving adequate medical care at VCDC and that she did not need to be transported to a different medical facility. VCDC and VFM did not provide Plaintiff with all of the necessary doses of the Vancomycin IV she was prescribed, and several of the doses were provided much later than was medically safe.

On or about May 19, 2012, Plaintiff complained that she felt very ill and as though she had a high fever. No medical care provider gave Plaintiff any treatment for fever or pain. On or about May 20, 2012, Plaintiff did not receive her evening Vancomycin dose until very late at night. She continued to feel worse and her fever continued to rise. No treatment was provided for her fever or pain.  Between May 19 and May 21, 2012, Plaintiff's medical condition continued to decline.

When she was taken for her second daily Vancomycin IV treatment, sometime after 11:00 p.m., on May 21, 2012, Plaintiff was barely able to move and wavered in and out of consciousness.  From April 26 2012 through May 21, 2012, Plaintiff repeatedly and frequently requested medical assistance in addition to what she was being provided, specifically, she requested that she be taken to a hospital or urgent care facility.  Instead, medical personnel working for VFM refused to provide Plaintiff with a transfer to a medical facility, or to supply sufficient medical assistance to Plaintiff.  In the early morning hours of May 21, 2012, VCDC correctional officers and VFM medical personnel determined that Plaintiff needed more intensive treatment and that she should be transported. Plaintiff was transported to Lovelace Medical Center, where she arrived at approximately 4:00 a.m.  Plaintiff was told by physicians in the emergency room that she required emergency surgery, and had only a fifty percent chance of survival. When she arrived at Lovelace, Plaintiff was suffering from septic shock and multi-organ system failure. Plaintiff had five abscesses that required surgery; one on her front left thigh, one on her right inner thigh in her groin area, one on her right outer thigh, one on her upper abdomen, and one on her lower abdomen. Some of these abscesses tested positive for methicillin-resistant Staphylococcus aureus.  Plaintiff was on life support until on or about May 25, 2012.

At one point Plaintiff's heart stopped. She had to be placed on a ventilator, and she had dangerously low blood pressure. Plaintiff had two more surgeries to treat the abscesses that had been permitted to continue to worsen during Plaintiff's time in VCDC. One surgery involved cutting a large "U"-shaped section on her abdomen, approximately ten inches wide and over a foot in length. She also required three blood transfusions. Her abdominal wounds, leg wounds

and groin wound required wound vacuums. Plaintiff remained at LMC in intensive care from May 25 through June 10, 2012.

Plaintiff was transferred to the Lovelace Rehabilitation Hospital on June 21, 2012 and remained there through July 17, 2012.  During her time there, Plaintiff had to re-learn to walk, and was required to endure hours of intensely painful rehabilitation exercises and procedures. She also received occupational therapy and extensive wound care. Upon her arrival at the Lovelace Rehabilitation Hospital, all five of Plaintiff's abscess wounds were bleeding and she also had to be treated for deep vein thrombosis.

Plaintiff continues to suffer physical pain from the surgeries she required, and she alleges that most of her body affected by the untreated abscess will never be as healthy as it could have been for lack of proper and timely treatment.  Plaintiff seeks damages for serious bodily injury, pain and suffering, and psychological and emotional distress and lost liberty, for which she seeks compensatory and punitive damages.

In this motion, Defendant moves for dismissal of Plaintiff's claims against her.  She is a Certified Family Nurse Practitioner ("CFNP") and during the relevant time of this lawsuit was a director and shareholder of VFM.  Plaintiff alleges that Defendant was responsible for providing medical services to inmates at VCDC, including Plaintiff, under the Medical Services Contract between VFM and VCDC.  Defendant claims that she has never provided medical care to Ms. Baldonado in her capacity as a registered nurse.  She also asserts that in her alleged capacity as a director and shareholder of VFM, Ms. Baldonado has never participated, controlled or directed any of Plaintiff's medical care and thus cannot be held personally liable for Plaintiff's injuries.

The Second Amended Complaint contains the following claims:

Count I:   42 U.S.C. § 1983 Claims Under Eighth Amendment against Defendants Warden Joe Chavez and VFM;

Count II:   §1983 Claims Under Eighth Amendment Against All Individual Defendants;

Count III:  Claims Under the New Mexico Tort Claims Act, NMSA 1978 §41-4-9 alleging Negligent, Grossly Negligent and Reckless Operation of a Public and Medical Facility Against Defendants Warden Joe Chavez , VFM, Leona Herrell and Kathy Fresquez-Chavez;

Count IV:   Claim for Medical Malpractice Against Defendants Otero-Granger, Leona Herrell, Kathy Fresquez-Chavez, Rolando Flores and VFM; and

Count V:    Claims of Negligence, Gross Negligence and Recklessness Against All Defendants.

**II.    Facts Pertinent to Defendant Fresquez-Chavez's Motion for Summary Judgment**

Plaintiff disputes each of Defendant's five statements of fact. In Facts 1 and 2, Defendant recites Plaintiff's allegations pertaining to VFM and Defendant, namely that VFM is a New Mexico corporation with its primary place of business location; and that Defendant was at all relevant times a "director and shareholder of VFM" and is sued in her official and individual capacities. Plaintiff contends that Facts 1 and 2 are not material for purposes of determining Defendant's liability, but the Court disagrees because Plaintiff has made these facts material by contending that the financial setup of the corporation is a sham and that VFM was the alter ego of individual defendants Leona Herrell and Defendant (Ms. Fresquez-Chavez). Doc. 159 at 2 ("From the beginning, the financial setup of the corporation was a sham"). Defendant's position as "director and shareholder of VFM" goes to the heart of her liability, at least from Defendant's standpoint and also from the opposite view taken by Plaintiff.

In Facts 3, 4, 5 and 6, Defendant contends that she did not see any patients during the time in which Plaintiff was incarcerated at VCDC and never provided any medical treatment prior to the filing of this lawsuit. Defendant seeks summary judgment because she did not participate, direct, control or approve any decisions relating to Plaintiff's care. Plaintiff does not

dispute that Defendant did not directly participate in Plaintiff's treatment but contends nevertheless that Defendant can be held personally liable as a matter of law by presenting additional facts which the Court now considers.

## III.     Legal Standard

In summary judgment proceedings filed under Rule 56, the burden of establishing the absence of a material question of fact is on the movant. *See Adickes v. S.H Kress & Co.*, 398 U.S. 144, 157 (1970). The movant can discharge that burden by showing that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material fact. *See Bacchhus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The plaintiff may not rest on its pleadings; instead, it must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 3 4.  Morever, where the factual context makes the non-moving party's claim implausible, that party must come forward with evidence even more persuasive than would otherwise be necessary to show that there is a genuine issue for trial. *Benshoof v. National Gypsum Company*, 761 F. Supp. 677, 679 (D. Ariz. 1991), *aff'd*, 978 F.2d 475 (9th Cir. 1992). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Defendant contends that she is not personally liable to Plaintiff under the facts alleged because her relationship with VFM as a shareholder and director did not impose a duty on her individually regarding medical care for Plaintiff and because Defendant has never met or treated

Plaintiff and so Defendant could not have breached her individual duty to exercise reasonable care towards Plaintiff.

I.      **Relevant Law**

Defendant relies on a basic tenet of corporate law that a corporation and its shareholders are distinct entities. *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474 (2003). Shareholders, directors and officers are not personally liable for the acts and obligations of the corporation. *Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F.Supp.2d 1167, 1177 (D.N.M. 2006). Corporate directors cannot be held vicariously liable for the corporation's torts merely by virtue of the office they hold. *Taylor v. Alsten*, 78 N.M. 643, 644 (N.M. Ct.App.). However, if an officer or director actively participates in the commission of the tortious act of the corporation, he or she will be liable, along with the corporation. *Id.; see also Lobato v. Pay Less Drug Stores, Inc*., 261 F.2d 406, 408-09 (10th Cir. 1958). Plaintiff points out, correctly, that the inquiry does not end there. Defendant could nevertheless be found liable for a federal civil rights violation or even under state tort law if she was a moving force that set in motion a series of events Defendant knew or reasonably should have known would cause others to commit or join in the tort or civil rights violation. *See Martinez v. Carson,* 697 F.3d 1252, 1255 (10th Cir. 2012) (citing *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006)). The required causal connection is satisfied if a defendant set in motion a series of events that defendant knew or reasonably should have known would cause others to deprive an individual of his or her constitutional rights. *Id.* (quoting *Trask*, 446 F.3d at 1046).

II.     **Personal Liability**

Defendant contends that there is a lack of evidence to support the existence of a duty and breach on her part that would make her personally liable. She offers evidence that Ms. Otero-

8

Granger was the administrator of care at the jail during all relevant times in the lawsuit, and that she was also the supervisor to the medical assistants. Ex. C (Fresquez-Chavez dep.) at 47:21-48:2; Ex. D (Flores' dep.) at 12:23-13:10. Defendant also presents evidence supporting her position that she was not personally involved in Plaintiff's medical care and was not a supervisor at VCDC when VFM placed Ms. Otero-Granger as the administrator to the VCDC contract. Ex. C at 41:23-42:5.[1] However, Plaintiff is not arguing that Ms. Fresquez-Chavez *was* directly and personally involved in Plaintiff's health care decisions or that she *was* acting supervisor at VFM during the time Plaintiff was detained at VCDC. Rather, she argues that Defendant's role at VFM was not confined to director and shareholder, and that Ms. Fresquez-Chavez was under a legal duty to act with respect to an identifiable group of VCDC inmates requiring health care from a licensed provider during the relevant period—and the Court finds that Plaintiff has presented just enough facts to support this position and withstand summary judgment.

    First, the contract documents support Plaintiff's position. Under the contract with VCDC, VFM agreed to provide health care services to inmates. Defendant signed the contract documents as a "contractual obligate." Doc. 107-9 at 1. In the letter of acceptance of the contract terms between Valencia County and VFM, Defendant signed herself as "CFNP" and "Owner." Doc. 107-9 at 5. Also, in the contract between Valencia County and VFM, VFM is described as the "Independent Contractor" providing the medical services. Doc. 107-10 at 2. Second, there is evidence that Defendant was a health care provider for VFM at the jail, even though she did not provide direct care to Plaintiff. Defendant was "on-call" as a service provider during April 27-28, which is during the time period Plaintiff was detained at the facility. Defendant admits that she saw patients at VCDC in 2010 and 2011. Ex. 15 at 37:2-13. She

---

[1] At the hearing, counsel for Plaintiff noted that the deposition excerpts that Defendant attached as exhibits to the reply raised new arguments not contained in the response. While the Court references these exhibits here, they do not end up being material to the issue of whether Defendant may be personally liability under the circumstances.

states that in 2011, she stopped going to VCDC to see patients because Co-Defendant Otero-Granger stopped scheduling her and that Co-Defendant Rolando Flores "kind of" replaced her. *Id.* at 63:19-64:5.[2] Defendant also acknowledged a disagreement with the deputy warden that may have had something to do with the reason why Ms. Otero-Granger stopped scheduling her to see patients. *Id.* at 65:8-66:14.

      The significance of these facts is that while Defendant may not have actually treated Plaintiff, Defendant was a nurse practitioner at VFM for a period of time which infers that she acted in a personal capacity at VFM in addition to being the company's director or shareholder. Plaintiff can withstand summary judgment if she can show that Defendant's role at VFM was not entirely confined to that of director and shareholder, and the above facts do show this. For purposes of a civil rights violation, "personal involvement" does not require direct participation because Section 1983 states that "any official who *causes* a citizen to be deprived of her constitutional rights can also be held liable." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citations and internal quotation marks omitted) (emphasis added). Even without direct participation, a plaintiff can establish a defendant-supervisor's personal involvement by demonstrating her "exercise of control or direction, . . . failure to supervise, or knowledge of the violation and acquiesce[nce] in its continuance." *Id*. (citation and internal quotation marks omitted). The relevant question then becomes whether Defendant's personal involvement could be established by showing a failure to exercise her control or direction notwithstanding the undisputed evidence that Defendant did not directly participate in Plaintiff's medical care and did not actually supervise that case directly.

---

[2]  According to the complaint, Ms. Otero-Granger was a student registered nurse responsible for providing medical services to VCDC inmates, including Plaintiff, under the contract between VFM and VCDC. Doc. 44, ¶ 6. Mr. Rolando Flores was a CFNP and employee of VFM and was also responsible for providing medical services to VCDC inmates, including Plaintiff. *Id.,* ¶ 15.

Under the contract with VCDC, VFM was required to provide a "minimum of 4 hours per week of clinical provider hours" by a nurse practitioner at the detention center. Doc. 107-9, Bates No. 002214. As one of the "key personnel" at VFM, and having acted in a personal capacity as a CFNP providing health care to patients at VCDC, Defendant would have been under an obligation not only to comply with the contract terms, but also to comply with a minimum standard of nursing care as set out in the Board of Nursing regulations. *See* 16.12.2 NMAC. These regulations include a requirement to maintain individual competence in nursing practice, and to delegate only those nursing actions which a person is prepared or qualified to perform, with the nurse retaining ultimate accountability for that delegated function or activity. *See Mata v. Saiz*, 427 F.3d 745, 757-58 (10th Cir. 2005) (quoting *Howell v. Evans*, 922 F.2d 712, 719 (11th Cir. 1991)) ("contemporary standards and opinions of the medical profession also are highly relevant in determining what constitutes deliberate indifference to medical care").

Plaintiff presents documentation showing that nurse practitioners were absent during the first week Plaintiff was detained at VCDC. Ex. 20. This meant that decisions about Plaintiff's medical condition were being made by unlicensed personnel with no on-site visit from a nurse practitioner, much less a physician. Many of the log entries were made by a Charity Romero, an unlicensed medical assistant who was under indictment on felony child-abuse charges at the time, and whose security clearance at VCDC was pulled while Plaintiff was still detained there. Ex. 22, Ex. 23 at Bates No. 007577. Records produced in discovery show numerous complaints by Plaintiff and requests for medical attention during the critical first week of her detention and thereafter. For example, the entry for 18:26 on VCDC's Female Unit Log for April 29, 2012, states that Detention Officer Woodruff "contacted medical about A. Baldonado complaining of severe pain in the upper back of her right leg. Charity [Romero] advised she would speak with

11

A. Baldonado but that nothing further would be done." Ex. 21, at Bates No. 007397.  Another medical log entry by "Charity" for April 30, 2012, states that: "Baldonado Alyssa was crying c/o pain, was told that when doc comes in she will be seen &  she's not going anywhere." Ex. 20, at Bates No. 007648.  An entry for May 2, 2012, states: "Baldonado keeps on crying to the C.O. now says she might have a blood clot. Trying to get her to be housed alone." Ex. 20, at Bates No. 007657.

Based on the additional facts presented by Plaintiff, a reasonable factfinder could infer that as an "owner" and one of the "key personnel" at VFM, Defendant would have been responsible for making sure that services were performed as promised under the contract, including supervision of the "supportive nursing staff." *See* Doc. 107-9, at Bates No. 002209, 002211, 002213 (schematic of staff showing hierarchy of VFM personnel in jail facility); Doc. 107-10 (Ex. 10), at Bates No. 002310 (signatures of VFM key personnel).  A factfinder could conclude that as one of two nurse practitioners, and one of four "key personnel" identified on the contract,  Defendant could be personally liable for an overdelegation of nursing tasks and a failure to provide and arrange for timely and appropriate care to Plaintiff during the critical time period the week after she was booked into VCDC on April 26, 2012—which happens to include Defendant's "on-call" day at VCDC—and that this failure contributed to a delay in Plaintiff's diagnosis and treatment, causing lengthy hospitalization and unnecessary complications.

Defendant has failed to produce any timesheets or records regarding the training, retention or supervision of the "supportive nursing staff" identified on the organizational chart in the contract documents, and this failure could suggest to a factfinder that such training, supervision or proper retentions standards did not exist.   See Fed. R. Evid. 803(7); *Stanphill v. Health Care Serv. Corp.*, No. CIV-06-985-BA, 2008 WL 2359730, at *2, *6 (W.D. Okla. June 3,

2008) (Bacharach, J., citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101, 113 (2d Cir. 2002). In addition, while Defendant makes much of the fact that she did not directly provide any patient care after she was replaced by Mr. Flores, there were no provisions or written protocols in the medical services contract which would take over to ensure that inmates received adequate care when more serious medical attention was required, perhaps by a physician. As one of "key personnel" on the medical services agreement and as a certified health care provider, a reasonable juror could find that Defendant would have had the duty to see that adequate management and supervisory functions were available.

### III.     VFM's Corporate Form and Liability

Defendant's position is that her status as VFM's director or shareholder precludes Plaintiff from asserting claims against her personally. As described above, Plaintiff has presented a sufficient factual basis which could infer that Defendant's role was not confined to her official duties, and that as a result she could have been under an obligation to oversee and supervise the provision of appropriate health care as promised under the contract.

Finally, the issue regarding a potential claim for piercing the corporate veil was raised in the summary judgment briefing and during oral argument but Defense counsel noted that there has not been plead a specific count for piercing the corporate veil. Plaintiff's counsel correctly observes that the doctrine of piercing the corporate veil is more an equitable tool that may provide a meaningful remedy rather than a separate cause of action and that the matter is premature for consideration since no judgment has been entered against VFM. *See Scott v. AZL Resources, Inc.,* 107 N.M. 118, 121 (1988) (noting that New Mexico decisions have held that piercing the corporate veil is an equitable remedy).

While there is certainly not enough factual substance at this point to consider summary judgment on the issue, neither will the Court dismiss it entirely.  For now, there is enough information in the record to preclude summary judgment on the issue of Defendant's personal liability.  Stated another way, Defendant will remain a party in this lawsuit over the long haul.

**THEREFORE,**

**IT IS ORDERED** that Defendant Kathy Fresquez-Chavez's Motion for Summary Judgment.  **(Doc. 97)** is DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE